### HOOPES v. NORTHERN NAT. BANK.

(Circuit Court of Appeals, Third Circuit. May 23, 1900.)

No. 21.

1. PROMISSORY NOTE—FAILURE OF CONSIDERATION—DEFENSE TO ACTION BY INDORSEE—PLEADING—AFFIDAVIT OF DEFENSE.

An affidavit of defense to an action upon a note, alleging that the same was given in part payment of certain machinery, which, by written contract, therein set forth, was guarantied by the payee to be of first-class material and workmanship, and to perform the work for which it was made, without breaking, and at a speed specified; but that the payee wholly failed to carry out its contract, that the machinery had failed to perform the work called for therein, had broken down, and had never been able to perform the work at the rate guarantied, owing to defects in workmanship; that said note was given in pursuance of an express oral agreement that it was to be paid at maturity if said guaranty of the payee was satisfactorily performed, and that otherwise an offset for damages was to be allowed; that defendant indorsed said note for accommodation only, and that plaintiff is only the holder of said note, the payee being the real owner thereof.—is sufficient to prevent judgment, and to require the submission of the case to the jury, since it alleges a failure of the consideration for which the note was given, which defense is available to an accommodation indorser.

2. SAME.

An affidavit of defense to an action upon a promissory note, alleging a failure of consideration, in that the note was given in payment of certain machinery, which was guarantied to be of first-class workmanship, and to do certain specified work, and that the payee had wholly failed to perform said guaranty, is not defective for not affirmatively alleging that the machinery was "properly handled," since this is to be presumed in the first instance.

Bradford, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

John A. McCarthy, for plaintiff in error.

George E. Johnson, for defendant in error.

Before ACHESON and GRAY, Circuit Judges, and BRADFORD, District Judge.

ACHESON, Circuit Judge. In Thompson v. Clark, 56 Pa. St. 33, the court said that it is not necessary that an affidavit of defense be drawn with such nicety that no critical skill can suggest an objection. In Twitchell v. McMurtrie, 77 Pa. St. 383, the rule was laid down that a reasonable intendment is to be made in favor of affidavits of defense; and in Moeck v. Littell, 82 Pa. St. 354, it was declared that the facts

set forth as constituting the defense need be averred with reasonable precision and distinctness only. In these cases, and in many other cases, some of which are hereinafter cited, the supreme court of Pennsylvania has ruled that, if the affidavit sets forth substantially a good defense, it should be supported. Now, it must be conceded that the affidavit of defense which this writ of error brings before us is not well drawn. Nevertheless, read fairly, giving to its averments a reasonable intendment, the affidavit discloses, we think, a substantial defense. The suit is by the Northern National Bank of Toledo, Ohio, against Herman Hoopes upon his irregular indorsement of a promissory note, of which the following is a copy:

"$3,100.                                                       Philadelphia, April 1, 1899.

"Four months after date I promise to pay to the order of Vulcan Iron-Works Co., thirty-one hundred dollars at Northern National Bank, Toledo, Ohio, without defalcation, for value received.        John McGill White."

This note is indorsed thus: First, "Frank C. Smythe," second, "Herman Hoopes," and thereunder as follows:

"Pay to the order of Northern National Bank, of Toledo, Ohio.
                    "The Vulcan Iron-Works Co.,
                            "By Alex. Backus, Pres't and Tr.
                    "Alexr. Backus."

The affidavit of defense presents at length a written contract and specifications attached thereto, dated May 11, 1898, between the Vulcan Iron-Works Company, the payee of the note in suit, and the Boise Dredging Company, whereby the former company agreed to furnish to the latter company, for a specified price, certain machinery for an elevator bucket dredge. The contract contains the following stipulation on the part of the Vulcan Iron-Works Company, namely:

"We will guaranty ample strength and good construction in every part, and that the material and workmanship shall be first class."

"We will guaranty the machinery we furnish to perform the work specified without breaking down, if properly handled."

And the attached specifications stipulate:

"The buckets * * * will have two running speeds; one at the rate of eleven buckets per minute, and one at the rate of sixteen buckets per minute."

The contract provided for part payment of the price of the machinery in the notes of the Boise Dredging Company.

The defendant's affidavit of defense alleges that in December, 1898, "at request of the Vulcan Iron-Works Company, said company agreed to accept in payment personal notes of John McGill White, treasurer of the aforesaid Boise Dredging Company, indorsed by deponent and Frank C. Smythe, directors of said Boise Dredging Company, upon an express oral agreement that said notes were to be paid at maturity if the aforesaid guaranty of the Vulcan Iron-Works Company was satisfactorily performed; otherwise, an offset for damages was to be allowed, and in no event was payment to be made till full test was made." The affidavit of defense then proceeds thus:

"Deponent avers that he signed said note as accommodation indorser under said agreement, and that the Vulcan Iron-Works Company has wholly failed

102 F.—29

to carry out said contract with said Boise Dredging Company; that said dredge and machinery have failed to perform the work called for by said contract, have broken down repeatedly, and have never been able to work at the rate of sixteen buckets per minute, owing to defects in workmanship."

And the affidavit contains this further statement, namely:

"Deponent believes, avers, and expects to be. able to prove at trial that plaintiff is only the holder of said note, and that the Vulcan Iron Company are the real owners thereof." ᵥ

Under this last averment it must be assumed for present purposes that the plaintiff is not the bona fide holder for value of the note in suit, but is suing thereon for the benefit of the payee, the Vulcan Iron-Works Company, and the case is to be treated as if the suit were by that company itself. Eyre v. Yohe, 67 Pa. St. 477; Bank v. Ellis, 161 Pa. St. 241, 28 Atl. 1082. Now, incontestably, the consideration of every promissory note is open to inquiry for the purpose of a defense between any of the immediate parties to the note. Clement v. Reppard, 15, Pa. St. 111; Peale v. Addicks, 174 Pa. St. 543, 34 Atl. 201. The present case, upon the averments of the affidavit, clearly comes within this rule, for the nominal plaintiff stands upon the rights of the payee, and the defendant is an original accommodation indorser. The affidavit of defense discloses that the note in suit was given for part of the price of the machinery furnished to the Boise Dredging Company by the Vulcan Iron-Works Company under the recited written contract. The affidavit clearly connects the note with that contract. It is also quite plain from the affidavit that the note was not taken in absolute settlement, but was given and accepted under and subject to the provisions of the contract for the machinery. According to the alleged facts, the payee took the note subject to defenses arising from the breach, by the payee, of that contract. The real defense here set up to the note is the failure of the payee to perform its contract. We are of opinion that the breach of the contract is set forth with sufficient particularity and fullness to send the case to a jury. It is averred that "the Vulcan Iron-Works Company has wholly failed to carry out said contract"; that "said dredge and machinery have failed to perform the work called for by said contract"; that they "have broken down repeatedly, and have never been able to work at the rate of sixteen buckets per minute"; and the cause for these failures is specified, namely, "owing to defects in workmanship." The draftsman has not here nicely distinguished between the dredging machinery and the dredge boat, but, giving to the language of the affidavit a reasonable construction, it discloses an out and out breach of the contract by the Vulcan Iron-Works Company; virtually, a total failure of the consideration for which the note in suit was given is averred and shown. Undoubtedly, the defense is available to this defendant, who is an accommodation indorser, and is here to be treated as a surety. Moeck v. Littell, 82 Pa. St. 354; Gunnis v. Weigley, 114 Pa. St. 191, 6 Atl. 465. The affidavit, we think, is not defective in that it does not affirmatively allege that the machinery was "properly handled." This is to be presumed in the first instance. If improper handling caused the failure, that is to be shown in rebuttal of the defense. Martinez v. Earnshaw, 143 Pa. St. 479, 486, 22 Atl. 668. An affidavit of defense

need not be framed with the technical accuracy of formal pleadings. Kaufman v. Mining Co., 105 Pa. St. 537, 542.

Our conclusion that this affidavit of defense is sufficient to carry the case to a jury is well sustained by the decisions. Bronson v. Silverman, 77 Pa. St. 94; Moeck v. Littell, 82 Pa. St. 354; Kaufman v. Mining Co., 105 Pa. St. 537; Ludington v. North, 141 Pa. St. 184, 21 Atl. 517; Martinez v. Earnshaw, 143 Pa. St. 479, 22 Atl. 668; Bacon v. Scott, 154 Pa. St. 250, 26 Atl. 422; Lane v. Sand Co., 172 Pa. St. 252, 33 Atl. 570.

In Bronson v. Silverman, supra, which was a suit by the holder of a note against the maker, the defendant's affidavit, after alleging that the plaintiff was not a bona fide holder, averred that the note was given for part of the purchase money of land, and that the payees were to execute and deliver to him a written contract as his title thereto, but had failed to do so. This was held to be sufficient to prevent judgment, the court saying:

"As evidence of his title, the written instrument would be of great value to him. The deprivation of it might work him great injury. Be that as it may, it was an indivisible part of the agreement which entered into the consideration for which the note was given."

In Kaufman v. Mining Co., supra, an averment in an affidavit of defense that the plaintiff sold the iron ore for the price of which the suit was brought upon a warranty as to quality which had been broken, was held sufficient to prevent judgment, although damages were claimed according to an alternative measure, and were stated only approximately. Speaking of the damages, the court said:

"We can only determine that question when it comes properly before us. It is now essential to the proper adjudication of the matters involved in this record."

In Ludington v. North, supra, an averment in an affidavit of defense that the note in suit was given in payment of pianos purchased under a contract by which the defendants were to be the exclusive sales agents of the payees for five years, and that by reason of the revocation of the agency without cause the defendants had been unable to dispose of the pianos, was held sufficient to prevent a summary judgment, although the affidavit set up an erroneous measure of damages. The court said:

"The question to be determined in this motion is, not whether the defendants have adopted a correct measure of damages, but whether they have stated facts from which a right to damages results. * * * These facts show a cause of action, and they are, therefore, good as matter of defense to an action by the vendors on a note for part of the price of the stock thus depreciated by their breach of their agreement."

In Martinez v. Earnshaw, supra, the plaintiffs had sold to the defendant "dry iron ore" of usual quality, "guarantied to contain a yield of fifty per cent. of iron in the natural state," and in a suit for damages for a refusal to accept the full quantity of iron ore sold the defendant filed an affidavit of defense averring that a portion delivered did not contain 50 per cent. of iron in the natural state; and that, as soon as he discovered this, he refused to receive

any more ore under the contract. This was held sufficient to prevent judgment, and the court said:

"We know at this time only that a literal breach by the plaintiffs is alleged and claimed, and a literal breach is enough to defeat a compulsory judgment without a hearing."

The judgment of the circuit court is reversed, and a procedendo is awarded.

BRADFORD, District Judge (dissenting). I am constrained to dissent from the judgment of the court. In my opinion it is sustained neither by principle nor authority. The note in suit is for $3,100, dated April 1, 1899, and payable four months after date. It was given in part payment of the price of certain machinery for an elevator bucket dredge furnished by the Vulcan Iron Works Company to the Boise Dredging Company. The affidavit of defense sets out as an exhibit thereto attached a certain written contract between the two companies above mentioned dated May 11, 1898, whereby the Vulcan Company agreed for the consideration therein named to furnish to the Boise Company the machinery for the dredge. This contract contained the following stipulations:

"We will guarantee ample strength and good construction in every part and that the material and workmanship shall be first class. We will guarantee the machinery we furnish to perform the work specified without breaking down if properly handled."

The specification attached to the contract and forming part thereof contains several hundred items, including, among others, the following:

"The buckets are to be of five cubic feet capacity each. They will have two running speeds. One at the rate of eleven buckets per minute and one at the rate of sixteen buckets per minute."

The affidavit of defense further sets forth that in December, 1898,

"At request of The Vulcan Iron Works Company said company agreed to accept in payment personal notes of John McGill White, Treasurer of the aforesaid Boise Dredging Company, endorsed by deponent and Frank C. Smythe, Directors of said Boise Dredging Company, upon an express oral agreement that said notes were to be paid at maturity if the aforesaid guarantee of The Vulcan Iron Works Company was satisfactorily performed otherwise an offset for damages was to be allowed and in no event was payment to be made till full test was made. * * * And that The Vulcan Iron Works Company has wholly failed to carry out said contract with said Boise Dredging Company, that said dredge and machinery have failed to perform the work called for by said contract, have broken down repeatedly and have never been able to work at the rate of sixteen buckets per minute, owing to defects in workmanship."

It appears from the contract attached to and made part of the affidavit of defense that the total consideration to be received by the Vulcan Company was to vary from $9,750 to $10,250, according to dates of shipment. The learned judge below held that the affidavit was fatally defective in several particulars and, among others, in that "no information is given as to whether the defendant claims an 'offset for damages,' and if so for what amount either exact or approximate." In this specific holding the learned judge was, in

my judgment, clearly right. Without discussing the other grounds of alleged insufficiency in the affidavit, I shall confine my remarks to the point last stated. It will be observed that this is not a case in which an affidavit of defense sets up several independent or distinct matters of defense any one of which if sufficient would prevent a summary judgment. Here, on the contrary, the several matters alleged by way of defense constitute a chain and each material link must be sufficient in order that the affidavit of de-- fense may be sustained. Therefore, on the assumption that the Northern National Bank, defendant in error, and Hoopes, plaintiff in error, stand in the shoes of the Vulcan Company and the Boise Company, respectively, with respect to the transaction in question, the case is narrowed to the point whether such facts are presented in the affidavit of defense as if proved would have defeated a recovery by the Vulcan Company against the Boise Company in a suit directly between those companies. The court says:

"Now it must be conceded that the affidavit of defense which this writ of error brings before us is not well drawn. Nevertheless, read fairly—giving to its averments a reasonable intendment—the affidavit discloses we think, a substantial defense. * * * According to the alleged facts the payee took the note subject to defenses arising from the breach, by the payee, of that contract. The real defense here set up to the note is the failure of the payee to perform its contract. We are of opinion that the breach of the contract is set forth with sufficient particularity and fullness to send the case to a jury. * * * Virtually a total failure of the consideration for which the note in suit was given is averred and shown."

The averments in the affidavit on which the court relies to sustain its conclusion are the following:

"That The Vulcan Iron Works Company has wholly failed to carry out said contract, with said Boise Dredging Company, that said dredge and machinery have failed to perform the work called for by said contract, have broken down repeatedly and have never been able to work at the rate of sixteen buckets per minute owing to defects in workmanship."

Now, assuming, as is necessary at this stage of the case, that all the above averments are true, they do not clearly and distinctly, or even by reasonable inference, set forth a total failure of consideration for the note in suit or a claim as "an offset for damages" equal to or greater than the amount of the note, nor do they specify either exactly or by approximation, or allege any excuse whatever for not so specifying, the amount of any "offset for damages" by way of partial defense to the note. The allegation that the Vulcan Company "has wholly failed to carry out said contract with said Boise Dredging Company" is vague, indefinite and ambiguous. It may mean one or more of several different things. If it could be treated as asserting a breach of the warranties relating to "ample strength and good construction," to the character of "the material and workmanship," and to the performance by the machinery of "the work specified without breaking down if properly handled," it would obviously be insufficient. It does not appear that the contract was at any time rescinded nor that the machinery was returned to the Vulcan Company. The mere allegation of the breach of such warranties cannot of itself support the affidavit of defense, for in such a case the breach of warranty is not a

condition, but can be taken advantage of only in an action on the warranty for damages or by way of set off in an action for the purchase money; and he who has suffered by such breach is bound to prove the breach and the amount of damages resulting to him therefrom and can recover or defend, as the case may be, only to the extent of such damages. As above stated, the specification annexed to the contract includes several hundred items of machinery. One who may properly be said to have wholly broken his warranty may nevertheless be entitled to recover the price of the warranted property subject to a set off by way of damages arising from such breach. If one sells a horse with warranty of good eyesight, and it turns out that it is blind in one eye, there is a total breach of warranty, yet if the vendee keeps the horse he cannot in an action for the price rely, by way of defense, on the mere breach of warranty, but has a defense only to the extent to which he has sustained damage through such breach. Or if an iron chain be sold for $100 with a warranty that it is sound and strong, the warranty extends to the whole chain; but if it turns out that some of the links are defective and weak, yet can be replaced or repaired for a trifling sum, he is entitled to recover the purchase price less the damage sustained by him through such faulty links, unless other elements of legal damage are shown to have been incurred sufficient in amount wholly to defeat the suit. Indeed, the contract in question recognizes this rule of law when it states that "said notes were to be paid at maturity if the aforesaid guarantee of The Vulcan Iron Works Company was satisfactorily performed, otherwise an offset for damages was to be allowed," etc. If, however, the averment in the affidavit of defense that "The Vulcan Iron Works Company has wholly failed to carry out said contract with said Boise Dredging Company" is not to be confined to the alleged breach of warranty, it is still vague, indefinite and ambiguous. The learned judge below well said:

"If this averment had ended with the general assertion that the Vulcan Company has failed to carry out its contract, it would, under all the authorities, have been clearly defective as lacking specification and definiteness."

It may mean a total failure to carry out the contract with respect to each and every of the several hundred items included in the specification either through omission to deliver any portion of the machinery or through failure of each and every item delivered to conform to the warranty, or it may mean a total failure with respect to the delivery of some of the items included in the specification or their non conformity with the warranty. There is no denial in the affidavit of defense that in consequence of the contract machinery was delivered by the Vulcan Company to the Boise Company. On the contrary it is plainly to be inferred from the affidavit that the machinery was so delivered. It states:

"Said dredge and machinery have failed to perform the work called for by said contract, have broken down repeatedly and have never been able to work at the rate of sixteen buckets per minute, owing to defects in workmanship."

A steamship built and delivered with warranty that she should be constructed of good materials, be of first class workmanship and

make seventeen knots an hour, may through some defect in her propeller or imperfection in connecting rods or the misplacement of a few bolts, fail to make the required speed and repeatedly break down. An affidavit of defense in an action for the purchase money that the builder had wholly failed to carry out his contract, that the vessel had failed to do the work for which she was ordered, and that she had repeatedly broken down, would be perfectly consistent with such a condition of things, but without alleging any repudiation of the vessel or specifying the defects and averring either exactly or approximately the amount of damages sustained by the vendee, and offering no excuse for the omission of such averment, would obviously be insufficient. And, as before stated, there is no allegation of any rescission of the contract or return of the machinery. While the affidavit discloses a breach of the contract and warranty, it does not allege either exactly or approximately the amount of damages sustained thereby or state whether such damages were or were not in excess of the note in suit, nor does it suggest any excuse for omission to mention the amount of the damages. They may be in excess of the amount of the note or they may be equal only to a small portion of that amount. The affidavit does not, in my judgment, disclose "virtually a total failure of the consideration for which the note in suit was given", as held by the court. In American Electric Const. Co. v. Consumers' Gas Co. (C. C.) 47 Fed. 43, it appeared that the plaintiff's statement of claim set forth a written agreement between the plaintiff and defendant for the sale and erection by the former of an electric-light plant. The plaintiff sued for the balance, amounting to $7,749.25, due on the contract. An affidavit of defense was filed which, among other things, alleged as follows:

"That the said American Electric Construction Company limited, did not and has not complied with its contract, and that the said Consumers' Gas Company has already been put to great delay and expense and damages to the amount of $10,000."

Judge Reed delivering the opinion of the court said, among other things:

"An affidavit of defense has been filed by the defendant, and the plaintiff has moved for judgment for want of a sufficient affidavit of defense. It is not necessary to cite authority for the rule that the affidavit of defense should state specifically and at length the nature and character of the defense relied on, and should set forth such facts as will warrant the legal inference of a full and legal defense to the plaintiff's cause of action, nor of the equally well settled rule that upon the hearing of a motion for judgment all the material averments of the affidavit must be taken as true."

And with respect to the portion of the affidavit above quoted, he said:

"This is clearly insufficient, stating conclusions, and not facts. The defendant should have specified the various matters in which it was claimed that plaintiff had failed to comply with its contract."

Judgment was rendered in favor of the plaintiff, notwithstanding the affidavit of defense. This case was taken on a writ of error to this court (1 C. C. A. 663, 50 Fed. 778), where the judgment of the

court below was affirmed, Judge Acheson delivering the opinion. Among other things he said:

"An affidavit of defense is insufficient to prevent judgment, unless it sets forth all the facts necessary to constitute a substantial defense. Mere general averments amounting to legal conclusions will not do. The specific facts must be stated, so that the court may draw proper conclusions. Nothing should be left to conjecture, for that which is not stated must be taken not to exist. These principles have been repeatedly declared and enforced. * * * Finally, the general allegations, without further specification, that the plaintiff 'has not complied with its contract,' and that the defendant 'has already been put to great delay and expense and damages to the amount of $10,000' are altogether too vague, indefinite, and uncertain, as the authorities cited at the opening of this opinion demonstrate. The court below was entirely right in holding that the affidavit of defense was insufficient, and in entering judgment for the plaintiff."

In Reed v. Raymond (C. C.) 37 Fed. 186, an affidavit of defense was filed in an action of scire facias upon a mortgage for the balance of the purchase money of certain lands. In a well considered opinion Judge Acheson said, among other things:

"It is well settled that an affidavit of defense is insufficient unless it sets forth all the facts necessary to constitute a substantial defense. Bryar v. Harrison, 37 Pa. St. 233; Marsh v. Marshall, 53 Pa. St. 396. General averments amounting to legal conclusions will not do; the facts must be stated in order that the court may draw the proper conclusion. * * * Nothing should be left to inference, for what is not stated in the affidavit must be taken not to exist. Brick v. Coster, 4 Watts & S. 494; Peck v. Jones, 70 Pa. St. 83; Asay v. Lieber, 92 Pa. St. 377. An affidavit of defense to a portion of a claim must state the amount admitted to be due. Griel v. Buckius, 114 Pa. St. 187, 6 Atl. 153. In an affidavit of defense setting up a breach of warranty of the quality of goods sold, the mere averment of a warranty, without more, is bad. * * * Furthermore, the affidavit of defense does not allege that the defendant has sustained any damages whatever by reason of the non-supply of natural gas. Giving the utmost allowable effect to the averments of the defendant's affidavit, it shows only a partial failure of consideration susceptible of compensation in damages, if any loss was sustained. Yard v. Patton, 13 Pa. St. 278-282. But the defendant does not allege that he has suffered any actual damage. * * * In the opinion of the court, the affidavit of defense is incomplete, vague and evasive in its statement of facts, and under the authorities altogether insufficient to prevent judgment."

One may look in vain through the affidavit of defense in question for any averment of actual damage sustained. There is no such statement. The only damages to which the defendant is entitled so far as the averments in the affidavit are concerned are purely nominal, arising by law from the fact of the breach of the contract. If all the facts alleged in the affidavit of defense were submitted to a jury, without supplementary evidence, no court would permit the jury to find that the Boise Company or defendant had sustained more than purely nominal damages. I find it impossible to reconcile the reasoning of the court in the several cases above cited with the decision of the court in this case. Reference will now be made to a few recent decisions of the Supreme Court of Pennsylvania bearing on the point under discussion. Most of them are later than the latest decision referred to in the opinion of this court bearing on that point, and as such should furnish a guide to this court in the matter of construction of Pennsylvania statutes and rules regulating practice.

Thomas v. O'Donnell, 183 Pa. St. 145, 38 Atl. 597, was an action brought to recover a balance alleged to be due on a building contract. The defendant in his affidavit set up several distinct and independent matters by way of defense. One of them was departure in specific particulars from the specification and defects in the work. The amount of the damage resulting from such departure and defect was not stated. While the court sustained the affidavit on other grounds, it recognized the proposition of law embodied in the syllabus as follows:

"In an action to recover a balance alleged to be due on a building contract, an affidavit of defense is insufficient which specifies certain departures from the specifications and defects in the work, but fails to state the amount of the resultant damage."

Vollmer v. Magowan, 180 Pa. St. 110, 36 Atl. 571, was an action on promissory notes for over $30,000 given for furniture and carpets sold to the defendant. The affidavit of defense averred, among other things, that the goods were all to be of first class quality and manufacture, but in fact were defective in various particulars specified, unknown to the defendant when he gave the notes, and also that the plaintiff had failed "to deliver some of the articles of a very valuable character, which still remain undelivered, to the extent of about at least $1,000." The affidavit did not otherwise describe the goods not delivered or state their value nor did it state the amount of damage sustained by the defendant by reason of the defective character of the goods delivered. It was, however, averred that "by reason of the aforesaid herein recited defects in the said goods, wares and merchandise, and the failure of said plaintiff to fully comply with his said agreement, he, deponent, is greatly damnified and injured." The court said:

"The affidavit of defense in this case is too vague and indefinite to carry the case to a jury, and hence there was no error in making the rule for judgment absolute."

Bridge Co. v. Bonta, 180 Pa. St. 448, 36 Atl. 867, was an action to recover a balance alleged to be due on a contract for building a plate glass mill. The affidavit of defense averred, among other things, that by reason of the plaintiff's delay in completing the work the defendant was prevented from carrying out a contract with a corporation in which he held stock and that thereby his stock had depreciated in value. The court thus dealt with this point:

"The third item was a cross-demand amounting to about three times as much as the plaintiff's claim, and was for an alleged fall in the value of the defendant's shares of stock in the plate glass mill. The allegation is that the defendant held two thousand three hundred and thirty six shares; and that these shares were depreciated at the rate of 'about $5 per share' by reason of the failure to complete the mill on the day named in the contract; and that the defendant has therefore suffered in damages because of the depreciation in the value of his stocks about twelve thousand dollars. The real contest in the court below and here is over the sufficiency of this item. It will be noticed that the value of these shares before and after the day when the mill was to be completed is not stated in the affidavit. The time when the depreciation took place, in what manner the extent of the depreciation is ascertained, how long the depreciation continued, and what was the value of the stocks when this action was brought, are circumstances that the affidavit

furnished no light upon. No facts from which depreciation, or its extent, can be inferred are given. Whether the stock ever had a market or selling value, whether any of it has been sold, and at what prices, and how the defendant is able to fix the depreciation at 'about $5 per share' we are not told. So far as we can learn from the affidavit, this is but the unsupported guess of the defendant at what might have taken place if he had put his shares upon the market. This is not enough. Without assenting to this mode of measuring his damages for a delay in the completion of the plate glass mill, we are satisfied that the defendant has not made such a statement of facts as could support this item, if it was clear that he would otherwise be entitled to rest upon it. The affidavit is insufficient in relation to both the first and third items. The second item was well stated, and the defendant has the benefit of it in the judgment appealed from. The assignments of error are overruled and the judgment is affirmed."

Light Co. v. McCorkell, 161 Pa. St. 227, 28 Atl. 1083, was an action to recover for designated quantities of electricity at a fixed price per lamp-hour alleged to have been furnished to the defendant. The affidavit of defense, although not stating the amount of electricity used by the defendant, was under the peculiar circumstances of the case held sufficient. But the opinion of the court is clearly in line with the doctrine of the cases already cited. The court said:

"While it is true the defendant does not state what the correct measurement of the electricity consumed was, or would have been, he proceeds to state a reason why it is impossible for him to make such a statement. He says the meter for the measurement of lamp-hours is the property of the plaintiff and under their sole control, that it was removed from the premises by the plaintiff, and he had no opportunity to test by a new and correct meter. He avers that because of this reason he cannot tell in what sum he is indebted to the plaintiff for electricity actually consumed and concludes by saying he is perfectly willing to pay what is justly due upon a proper test of the current by a proper instrument. It seems to us that this affidavit discloses a reasonable excuse for not expressing the amount he does owe. The meter being removed from the premises the defendant would have no opportunity of examining it with a view of determining the correctness of the quantity registered, or of comparing it with the quantity which he claims it ought to have registered."

The law does not require the performance of impossibilities in order to prevent the sacrifice of a man's rights. This was the ground on which the court proceeded. It held that the defendant was excused from doing that which it was impossible for him to do, but which had it been practicable the defendant must have done, namely, set forth in his affidavit the amount of electricity he had used.

After careful examination of all the authorities cited by the court they are, in my judgment, without exception, clearly distinguishable from and inapplicable to this case, so far as the point under discussion is concerned. I now refer to them in some detail. In Thompson v. Clark, 56 Pa. St. 33, the defendant averred in his affidavit that the draft in suit, of which he was the acceptor, did not belong to the plaintiff but to one Gray who had done certain work for the Thompson Oil Company, and that the "defendant has overpaid said Gray for the work done for said Thompson Oil Company, and that nothing is now due him from defendant." Twitchell v. McMurtrie, 77 Pa. St. 383, was an action of scire facias on a mortgage. The defendant in her affidavit, among other things, averred that at the time of the execution of the mortgage in suit,

"She and her husband were confined in prison, and said mortgage was given as security for any expenses that might arise from their approaching trial, and under the express agreement with the said O'Byrne, that he would never in any manner assign or part with said mortgage. * * * And the said O'Byrne immediately after the said assignment to him, took possession of the said property, and has retained the same until just prior to this suit; has rented the premises, collected the rents, made the repairs, paid the taxes, and generally acted as a mortgagee in possession, and that she has never received any return therefrom in any way, nor any account thereof, although she has often demanded the same from him. That she has never received from the said O'Byrne any statement or account of the expenses of her and her husband's trial, or either of them. notwithstanding she has urged the rendering of such account or statement by him."

The affidavit further averred that O'Byrne, though not appointed, acted as administrator of her mother's estate, selling the personal property and "collecting the credits in his own name" and that

"Upon a citation, the account of said administration was filed April 26th, 1872, and has been referred to an auditor, before whom she believes and expects to be able to prove that a large portion of the assets of said estate are unaccounted for, amounting to more than the principal sum of said mortgage."

Moeck v. Littell, 82 Pa. St. 354, was an action against the endorser of a promissory note. The defendant in his affidavit averred, among other things, that he purchased from one Rowley the lease of a certain tavern and certain personal property therein for the sum of $1,700, paying $500 in cash and giving Rowley two notes, one for $500, on which suit had been brought and judgment rendered, and the other for $700, being the note in suit; that the personal property on the leased premises was "almost worthless," and that in a very short time the tavern stand became "entirely untenable, and had to be entirely abandoned." The affidavit concluded as follows:

"The defendant avers that the consideration for the note in suit has not only entirely failed, but more than failed, but affiant further avers, expects to be able to prove and show in the trial of this case, that James Littell, the plaintiff above named, is not the owner and holder for value and before maturity of the note in suit, but the same was handed over to him by John Rowley, the payee, for the purpose of debarring the maker and endorsers thereof from a defense to the same."

Eyre v. Yohe, 67 Pa. St. 477, was an action on a negotiable note for $2,703.75, by an endorsee against the maker. The defendant in his affidavit averred that the note was the property of one Gordon, the payee, and not of the plaintiff; that the note included "usurious and unlawful discount and interest" to the amount of $815; and alleged as follows:

"Deponent therefore claims a deduction of $815 on the note now sued upon, being the amount of usurious and unlawful discount over and above six dollars to the hundred allowed on said note."

The affidavit was sustained as setting forth a defense pro tanto. Clement v. Reppard, 15 Pa. St. 111, does not relate to an affidavit of defense and has no bearing on the point under discussion. Nor does Peale v. Addicks, 174 Pa. St. 543, 34 Atl. 201, bear directly or indirectly on the point. In Bank v. Ellis, 161 Pa. St. 24, 28 Atl.

1082, it was held that the plaintiff's statement was insufficient without reference to the affidavit of defense. The court said:

"It follows that the plaintiff's statement in this case is fatally defective; and without reference to any of the averments of the affidavit of defense, it is not in a position to demand judgment. But waiving all that, the defendant in his affidavit avers in substance that no consideration was paid either by the maker of the note in suit, or by the plaintiff bank; that the latter 'paid nothing either for or on account of said note to anyone,' but is a mere transferee without value and holds the same merely for collection for account of De Saville, the maker, who is indebted to deponent 'in large sums of money much in excess of the amount of said note.' For present purposes we must assume that these averments of facts are true."

Gunnis v. Weigley, 114 Pa. St. 191, 6 Atl. 465, while supporting the proposition for which it is cited by the court, does not seem to have any definite bearing on the point under discussion. Bronson v. Silverman, 77 Pa. St. 94, was an action on a promissory note for part of the purchase money of lands. The defendant in his affidavit, among other things, averred as follows:

"That the said note was given by affiant for the purchase money, in part, of a certain tract of land, for which Hugh Maher and the Chicago Petroleum and Mining Co. were to make, execute and deliver a written contract to affiant, as his title thereto, which paper has never been delivered to affiant, as agreed upon, and he has no written evidence of his contract or the purchase of said land, nor title thereto."

The court said:

"Wherever the land lies, the agreement was to furnish written evidence of title. This is the specific contract averred and a breach of it is affirmed. * * * As evidence of his title, the written instrument would be of great value to him. The deprivation of it might work him great injury. Be that as it may, it was an indivisible part of the agreement which entered into the consideration for which the note was given."

In my judgment, this case is not in point. The delivery of written evidence of the title was the consummation and an indivisible part of the agreement for which the note was given. It would plainly have been impossible for the defendant to have stated either exactly or approximately the amount of damage resulting to him from the failure to deliver the title papers, and the affidavit was properly sustained. Bacon v. Scott, 154 Pa. St. 250, 26 Atl. 422, was an action on promissory notes given in part payment of the price of certain moldings, blinds and doors sold under an express warranty. The defendant averred in his affidavit that the goods furnished were "unsuitable for the purposes ordered and not as represented in size and kind, and deponent was compelled to sell the same at the following losses." The losses were specifically stated in amount. The defendant further averred in reference to the prices obtained by him, as follows:

"And that these prices were the best that could be obtained for the same, and were all they were worth. That deponent suffered a further loss, by reason of the same, of an amount greater than the entire amount of notes in suit."

The court said:

"The specific loss on each of the articles thus sold is then set forth and it is followed by the averment that the prices for which they were sold were the best prices that could be obtained, and that they were all they were

worth. The affidavits thus aver an express warranty, its breach, and the damages resulting therefrom."

Ludington v. North, 141 Pa. St. 184, 21 Atl. 517, was an action on a promissory note for $345 given by the defendants in part payment of the price of certain pianos. The defendants averred in their affidavit, among other things, that they became the purchasers of the pianos under an agreement that the defendants should be the exclusive sales-agents of the payee for the balance of a term of five years; that subsequently in violation of the agreement the payee took away the agency for the pianos from the defendants without just cause or reason and before the expiration of the balance of said term and entered into a contract of agency with another dealer. The affidavit then states:

"That in consequence of the taking away of said agency from defendants, twelve of the pianos purchased by them remain upon their hands unsold, although they have made diligent efforts to sell the same; that defendants, by reason of the breach of said contract, have lost the price of said pianos which remain unsold, which would amount to $2,000, and in addition thereto defendants have lost their time and expense of advertising, all of which has been rendered useless by reason of the taking away of said agency from them."

Here there was a statement of a definite pecuniary loss in excess of the amount of the note in suit. Kaufman v. Iron Co., 105 Pa. St. 537, supports the proposition of law which has repeatedly been recognized that "a claim of set-off in an affidavit of defense need not be of a certain liquidated amount, where the facts out of which the alleged set-off arises, as stated in the affidavit, are such that an approximate amount only could be stated." It is merely an application of the maxim that the law does not require the performance of that which is impossible. The action was on the common counts for the recovery of $1,338.75 as the price of iron ore sold and delivered at $3.50 per ton. The defendants in their affidavit averred, among other things, that the defendants purchased from the plaintiffs through the agents of the latter 300 tons of iron ore on the express agreement that all of it should be well roasted and in all respects equal in quality to 50 tons of iron ore theretofore purchased from the plaintiffs, and that the ore when furnished was poor in quality, unlike the previous 50 tons and utterly unfit for the manufacture of foundry iron. The affidavit further averred as follows:

"The said iron ore was not and is not worth more than one dollar and seventy five cents per ton. Through the violation of the said contract by the plaintiffs and the shipment of an inferior quality of ore as aforesaid, the defendants incurred damages in an amount exceeding the plaintiffs' claim for the price of the said ore. Defendants were at the time of the said contract manufacturing foundry iron and had the entire product of their furnace sold for upwards of a month in advance to foundry men and for foundry purposes. * * * The number of tons of iron, spoiled by the inferior quality of the said ore was about three hundred, and the difference between the value of the iron which defendants could and would have made from ore of the quality stipulated for, and the iron actually made of the said ore, was three dollars per ton."

The defendants in a supplementary affidavit of defense averred, among other things, as follows:

"The said iron ore was not and is not worth more than one dollar and seventy five cents per ton, and the defendants claim to set off against the

plaintiff's claim the difference between the actual value of the said ore, viz: one dollar and seventy five cents per ton, and the value it would have possessed if it had conformed to the warranty, viz: three dollars and fifty cents per ton, making altogether upon the three hundred tons the sum of four hundred and fifty dollars."

The court said:

"The affidavits filed in this case set forth, we think, a valid defense against the plaintiffs' claim at least pro tanto; the facts stated in each are different, and on that account should be carefully examined; but they do not contain alternative allegations upon the subject-matter of the defense. * * * The damages resulting from the breach are, it is true, assessed according to an alternate measure, and the defendant claims to recoup or recover by way of set-off, according to one, or other, or both of these, as the law may entitle him. What may be the proper measure of damages, we will not now consider; the rule entered was for judgment on the plaintiffs' claim, not for any part of it. It is sufficient for the purpose of this case, as now presented, if a valid defense is asserted for part."

The inapplicability of Kaufman v. Iron Co. to the present case is too apparent to require argument. Lane v. Sand Co., 172 Pa. St. 252, 33 Atl. 570, was an action to recover a balance of $2,134.26 alleged to be due on a written contract for furnishing and erecting machinery and a mill plant. The plaintiffs' statement of claim set forth the contract which contained, among other things, the following:

"The said machinery, etc.. including and intending to include all things necessary and needful for setting up and furnishing a complete apparatus for crushing, washing, conveying and drying sand to the full capacity herein guaranteed by said first parties. * * * The said first parties further agree to guarantee said grinding and washing machinery when put up to have a capacity of eight tons per hour, and the dryer to have a capacity of four tons per hour."

The affidavit specified among other damages sustained by the defendant items of damage aggregating some $1,700. The opinion of the court sufficiently shows the nature of the defense set up in the defendant's affidavits, as follows:

"Without referring at length to the affidavits of defense, it is sufficient to say that they expressly deny that plaintiffs substantially performed their contract, and aver that 'the mill, plant or machinery' they agreed to put up under the contract 'was not erected or constructed in accordance with the terms of said contract, but in such an unworkmanlike and defective manner as to cause the defendant great loss and damage,' etc. That the same was 'so defectively constructed in workmanship and of such defective material as to render the said plant almost wholly useless for the purpose for which it was intended.' After specifying wherein the plaintiffs failed to comply with their contract, etc., it is further averred, 'that without taking into consideration the injury defendants sustained by reason of the defective work done by the mill, owing to faulty material and construction, and failure of the plaintiffs to perform their contract, the defendants sustained damages to more than the amount alleged to be due on the original contract,' etc."

The case just referred to does not in any manner, in my judgment, sustain the decision of this court. On the contrary, it is an authority against it; the court recognizing as material and essential the averment "that the defendant sustained damages to more than the amount alleged to be due on the original contract." The only remaining case cited by the court is Martinez v. Earnshaw, 143 Pa. St. 479, 22 Atl. 668. The action was for an alleged breach by the defendant.

of a written contract for the purchase by the defendant from the plaintiffs of a certain quantity of dry iron ore warranted in the contract to contain a certain percentage of iron in the natural state. The defendant in his affidavit averred that upon the arrival of the ore it was tested and ascertained not to accord with the samples or the guaranty in the contract. The affidavit further averred as follows:

"The defendant did not discover these facts until after the iron had been delivered at the furnaces and it had become impracticable to reject and return the ore, nor could he, in the usual course of business of this kind, have discovered the fact sooner. Immediately on ascertaining the fact that the ore shipped did not correspond to the quality guaranteed, the defendant repudiated the contract that had been made and refused to receive any more ore under it."

It was properly contended on the part of the defendant "that the defendant is not in court on the effect of a delivery and acceptance, but on the obligation to accept a thing that differs from the thing bought." The court sustained the affidavit of defense, saying among other things:

"We know at this time only that a literal breach by the plaintiffs is alleged and claimed, and a literal breach is enough to defeat a compulsory judgment without a hearing."

This language was undoubtedly correct as applied to the facts of that case, but has no proper application here. There the defendant promptly "repudiated the contract." Here nothing of the kind occurred. There was no rescission of the contract nor return of the machinery. That, in the absence of rescission or repudiation, the allegation of a mere breach of warranty as to the quality of goods sold and delivered, without averring damages, is sufficient in an affidavit of defense, was not held in that case. To put such a construction upon the words quoted would bring that case into irreconcilable conflict not only with later cases decided by the Supreme Court of Pennsylvania, to which I have referred, but also with the federal decisions to which allusion has been made, and particularly the statement by Judge Acheson in Reed v. Raymond (C. C.) 37 Fed. 186, that "in an affidavit of defense setting up a breach of warranty of the quality of goods sold, the mere averment of a warranty, without more, is bad." I have now, without exception, referred to all the cases cited by the court. Not one of them, in my opinion, supports or tends to support the judgment in this case against the objection to the affidavit as being fatally defective in not alleging either exactly or approximately the damages, if any, sustained by the Boise Company or any excuse for omitting such an averment. The manifest intent of the statutes and rules in Pennsylvania relating to affidavits of defense is that the defendant, while not held to the niceties of special pleading at common law, must nevertheless by his affidavit, as far as practicable plainly and fully inform the plaintiff of the nature and extent of the defense on which he relies. If it goes either to the entire amount or to only a portion of the amount claimed by the plaintiff it must be so shown by the affidavit. In averring a counter-claim or claim for damages by way of set-off, the defendant must, when practicable, state the exact amount, as held in Griel v. Buckius, 114 Pa.

St. 187, 6 Atl. 153. If it be impracticable to state the exact amount, as in the case of an unliquidated claim, the defendant must, if possible, state approximately the amount of his set-off, as recognized in Kaufman v. Iron Co., 105 Pa. St. 537. If the circumstances of the case are such as to render it impossible for the defendant to state either exactly or approximately the extent of his .damages, he is excused from so doing, as held in Light Co. v. McCorkell, 161 Pa. St. 227, 28 Atl. 1083, and Twitchell v. McMurtrie, 77 Pa. St. 383. But here the defendant has averred no excuse whatever for omitting to state approximately, if not exactly, the amount of damage sustained as he might have done by specifying the defects, and stating that he verily believed that thereby the Boise 'Company sustained damage to an amount not less than so many dollars. He fails to give to the plaintiff information it has a right to receive. He is wholly silent on the subject. Nor does the affidavit disclose any circumstances from which it might fairly be inferred that he was unable to state by way of approximation, at least, the amount of damage sustained. The clear result of all the cases heretofore cited, state and federal, is that in view of these facts, the affidavit is fatally defective, and requires that the judgment of the court below should be affirmed. It may be that the defendant employed a careless or incompetent attorney. But persons who entrust their legal affairs to such attorneys must abide the consequences of their improvidence. To sustain such a defective affidavit as that filed in this case, in my judgment, involves a clear departure from the law as recognized not only by the Supreme Court of Pennsylvania but by this court, and virtually puts a premium on the making of insufficient or evasive affidavits calculated, if not designed, to hinder and delay the due administration of justice.